ALFORD *v.* STATE.

Opinion delivered June 29, 1901.

CONSTITUTIONAL LAW—NUMBER OF JUSTICES OF THE PEACE.—Act February 16, 1893, § 2, prescribing "that, in ascertaining the number of justices of the peace to be voted for and commissioned, the number of the votes cast in the general election next preceding shall be taken as conclusive of the number of electors in the township," is not in conflict with section 39, art. 7, of the constitution, providing that "for every two hundred electors there shall be elected one justice of the peace."

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

*A. Curl,* for appellant.

The court erred in overruling appellant's demurrer, and in its declaration of law holding section 4309 of Sandels & Hill's Digest constitutional. Const. art. 7, §§ 38, 39; *ib.* art. 3, § 1; 32 Ark. 131; 45 Ark. 400; Const. art. 13, § 3.

BUNN, C. J. This is a proceeding, in the nature of a *quo warranto* proceeding, to try the title of the appellant, J. W. Alford, to the office of justice of the peace of Hot Springs township, in Garland county, this state.

The respondent answered, denying that he had usurped said office. He sets forth his personal qualifications to hold the office, and claims that he was elected as such justice of the peace at the general election held September 4, 1900, and was commissioned as

such on the 31st October, 1900, and duly qualified on the same day, and then entered upon, and has since continued to perform, the duties of said office. Respondent was the ninth, in order of the votes received, of persons voted for at the general election in 1900 for the office of justice of the peace in said township. The controversy is over the number of justices of the peace to which said township was entitled at the time. The constitutional provision is af follows: Art. 7, sec. 39: "For every two hundred electors there shall be elected one justice of the peace; but every township, however small, shall have two justices of the peace." In his answer, which calls in question the constitutionality of the act approved February 16, 1893, entitled "An act to determine the number of justices of the peace in each township," the respondent shows that 1,346 votes were cast at the general election in 1898; and that 1,800 votes were cast at the general election in 1900, in said township, making a difference of 454 votes increase in the two years.

Under the provisions of the act of 1893, the township was entitled to only six justices of the peace, to be elected at the general election in 1900, as that act bases the calculation of the number upon the vote cast in 1898; but if the vote of 1900 be taken as the basis, as respondent contends, then the township would be entitled to nine justices of the peace, and he was elected among the nine, and so commissioned by the governor of the state. The relator demurred to the answer, and the question of the constitutionality of the act of 1893 was thus raised. The second section of the act is the only part of the act which affects the question under consideration, and that section reads as follows, to-wit: "In ascertaining the number of justices of the peace to be voted for and commissioned, the number of votes cast in the general election next preceding shall be taken as conclusive of the number of electors in the township."

The contention of the respondent is that this act is in violation of the constitutional provision as to the number of justices of the peace to which each township is entitled, and the reasoning is that the number of votes cast two years previously is no just criterion by which to determine the number of justices of the peace to which a township is entitled at the ensuing election, and that such a rule is in fact in violation of the constitutional provision.

It is evident that the constitutional provision is not, in the true sense, self-executing; that is to say, that it makes no provision

for determining the number of votes from which the number of justices of the peace is to be determined, or at what time the number of votes is to be cast or otherwise shown. It is evident, also, that, except by actual census immediately preceding the election at which these justices of the peace are to be elected, no exactness nor approximation thereto may be attained by any known method. Even the number of poll-tax payers, as used in cases of elections for the removal of county seats, is not or may not be approximately accurate under circumstances. It was the duty and within the province of the legislature to adopt some method of determining the number of electors in a township, in order to determine therefrom the number of justices of the peace to which it is entitled, for, without the establishment of such a method, there could be no election of certain validity. The plan adopted by the act of 1893 is certainly not accurate, for changes in the number of electors are at least liable to take place within two years; but the question really addressed to the legislature was, not to adopt a perfect method, but the most perfect available, under the circumstances. In its final conclusion on the subject it doubtless reasoned that the harm that might be done by the adoption of the best available, but inaccurate, method would be by no means equal and commensurate with the evil arising from the absence of all methods, or from the expense and inconvenience of endeavoring to make anything subservient to mere accuracy. Besides, it doubtless considered the method adopted only temporary in any evil effects it might have, if any should result therefrom in any given case. In other words, the act in question was doubtless the embodiment of the very best method the legislature could conceive of under the circumstances. This being the case, we do not feel at liberty to declare the enactment unconstitutional. The dilemma of the legislature is emphasized when it is remembered that, under our present election system then in vogue, it is absolutely necessary to determine the number of justices of the peace before the result of the ensuing election is made known.

The judgment of the lower court is therefore affirmed, and said act is constitutional.